Honorable Leif B. Erickson
Federal Magistrate Judge
Missoula Division
Russell E. Smith Courthouse
201 East Broadway, Room 370
Missoula, MT  59802

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

| | |
|---|---|
| TONI L. MARTIN, | CAUSE NO. CV 05-78-M-LBE |
| Plaintiff, | |
| vs. | FINDINGS AND |
| JO ANNE B. BARNHART, | RECOMMENDATION OF |
| Commissioner of Social Security, | U.S. MAGISTRATE JUDGE |
| Defendant. | |

_____

Claimant brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security (Commissioner) denying Claimant's application for disability insurance benefits and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act).

Both parties have moved for summary judgment and the issues have been fully briefed.  For the reasons stated below, the Court enters the following:

**RECOMMENDATION**

IT IS RECOMMENDED that the Commissioner's Motion for Summary Judgment be **GRANTED,** Claimant's Motion for Summary Judgment be **DENIED,** and the Commissioner's decision be **AFFIRMED.**

FINDINGS AND RECOMMENDATIONS - PAGE 1

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.

The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

Dated this  19th  day of January, 2006.

>  /s/
>  Leif B. Erickson
>  U.S. Magistrate Judge

## **RATIONALE**

### **I.   BACKGROUND**

Claimant brings this action challenging the Commissioner's decision denying her application for benefits.  She filed an application for disability insurance benefits and SSI on February 26, 2003, with a protective filing date of January 27, 2003.  Tr. 50-52, 229-232.  She alleges a disability onset date of November 28, 2002, and contends she is unable to work due to rheumatoid arthritis and degenerative disc disease of the cervical spine. Tr. 15, 50, 64.

The Administrative Law Judge (ALJ) issued his decision denying Claimant's application for benefits on February 7, 2005. Tr. 14-20.  The Appeals Council later denied Claimant's request

for review, rendering the ALJ's decision the agency's final decision for purposes of judicial review.  Tr. 5-9.

## II.  FINDINGS OF THE ALJ

Adhering to the steps in the sequential evaluation process, the ALJ first found that Claimant had not engaged in any substantial gainful activity since the alleged disability onset date.  Tr. 15.  The ALJ next found that Claimant suffered from severe rheumatoid arthritis and degenerative disc disease of the cervical spine.  Tr. 15.  Although the ALJ found that the combination of Claimant's impairments was severe, he determined that those impairments did not meet or equal the severity of any impairment described in the Listing of Impairments.  Tr. 19.  The ALJ found nothing in the evidence to show the Claimant could not ambulate effectively.  Tr. 15.  The ALJ further found that Claimant retained the residual functional capacity (RFC) to perform a limited range of light work, but could not return to any of her past relevant work.  Tr. 18.  Finally, based on vocational expert testimony and using the Medical-Vocational Guidelines (Appendix 2) and vocational rule 202.14 as guidelines, the ALJ concluded that there remained a significant number of jobs in the economy that Claimant could perform consistent with her residual functional capacity, age, education, and work experience.  Tr. 19.

## III.  CLAIMANT'S ALLEGATIONS OF ERROR

Claimant challenges the ALJ and Commissioner's decisions on several grounds.  First, she maintains that the ALJ inappropriately disregarded the recommendations of her treating physicians.  Claimant also argues the ALJ failed to cite sufficiently clear and convincing reasons for discounting her testimony and finding her not entirely credible.  Finally, the Claimant contends the ALJ failed to consider the combined effects of her multiple impairments.

**IV.  STANDARD OF REVIEW**

The Court's review in this case is limited.  *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The Court must affirm the Commissioner's decision denying benefits if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Commissioner*, 359 F.3d 1190, 1193,(9th Cir. 2004).  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, (1971) but "less than a preponderance." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

The Court will uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson,* 359 F.3d at 1193 (*citing Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).  "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to

the Commissioner's decision."  *Id.* (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)).

**V. DISCUSSION**

   **A. Treating Physicians**

   Claimant argues the Commissioner "rejected the treating physicians' opinions that [she] is unable to work."  Pl.'s Br. in Support, at 5 (August 22, 2005).

   A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the records.  20 C.F.R. § 404.1527(d)(2).

   The Commissioner may disregard the treating physician's opinion whether or not that opinion is contradicted.  *Magallanes*, 881 F.2d at 751.  In discounting the controverted opinion of a treating physician the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  To do so

the ALJ must set forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. If the treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information utilized by the treating physician, the ALJ may only reject the treating physician's opinion if the ALJ gives specific, legitimate reasons for doing so and those reasons are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1041.

However, the ALJ may only reject the uncontradicted opinion of a treating physician when the ALJ presents clear and convincing reasons that are supported by substantial evidence in the record. *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830); *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751. A medical opinion is considered uncontroverted if all the underlying medical findings of claimant's physical impairments in the record are similar. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

        1.  <u>Dr. Schlessinger:</u>

Claimant argues the ALJ did not give sufficient weight to Dr. Schlessinger's note of September 14, 2004, in which she stated that Claimant was "a 53-year-old, disabled, unemployed, nursing assistant from St. Pat's ICU with polyarticular, nodular,

FINDINGS AND RECOMMENDATIONS - PAGE 6

erosive, deforming rheumatoid arthritis." Tr. 226.

Dr. Schlessinger made this note in the history taking portion of her evaluation, and a review of her comments indicates the disability statement is not so much an opinion, but a patient history at intake. A further review of the report does not support any finding that Claimant is unable to work.

The ALJ specifically discussed Dr. Schlessinger's report in his decision, noting that she had performed a "rheumatological evaluation" and "found some deforming changes to the claimant's hands and feet," but detected "no evidence of ongoing active synovitis." Tr. 16; 227. As the ALJ further observed, Dr. Schlessinger concluded that Claimant's condition was "well controlled on current disease modifying medication." Tr. 227; Tr. 16. Dr. Schlessinger recommended that Claimant continue on her Arava and Enbrel with lab monitoring and wanted to see her again in six months or as needed. Tr. 227-28.

It is evident from the text of the ALJ's decision that he considered Dr. Schlessinger's evaluation and her clinical findings. Having done so, the ALJ was not required to give any particular weight to her passing reference to Claimant as a "53-year-old, disabled, unemployed, nursing assistant." An opinion as to the issue of disability is not a "medical opinion" and is merely an opinion on a matter reserved for determination by the Commissioner. 20 C.F.R. § 404.1527(e)(1). Such opinion is not

conclusive on the ultimate issue of disability, and the Commissioner is not obligated to give any special significance to such opinions. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The Court thus concludes that the ALJ properly considered Dr. Schlessinger's report, which indicated the Claimant's rheumatoid arthritis was controlled through medication and did not support a finding of disability.

Dr. Corsi

Claimant argues that the ALJ failed to give sufficient weight to a February 9, 2004, treatment note by Dr. Corsi. Specifically, Claimant argues the ALJ ignored the fact that Dr. Corsi recommended that Claimant undergo a neurosurgical evaluation for cervical radiculopathy. Pl.'s Br. in Support, at 5; Tr. 135. Claimant also suggests that the ALJ should have given more weight to the following portion of Dr. Corsi's report:

> [Claimant] underwent evaluation by Dr. Michael Young who found she had evidence of cervical radiculopathy and recommended an MRI evaluation. MRI shows a herniation of disk as well as facet osteoarthritis with the combination causing cervical stenosis as well as neural foraminal narrowing. Symptoms are worse on right than on the left, neurology evaluation revealed a left cervical radiculopathy. Having symptoms of pain along the lateral aspect of the arm and scapula as well as pain radiating down into her 3rd through 5th digits associated with numbness and tingling.

Tr. 135.

However, Claimant fails to explain why she believes these particular observations undermine the ALJ's ultimate assessment. In fact, the ALJ specifically discussed this report in his

FINDINGS AND RECOMMENDATIONS - PAGE 8

decision, noting that "[a] neurological evaluation [had] confirmed left cervical radiculopathy, and the claimant was prescribed pain medication." Tr. 16. As the ALJ also observed, Dr. Corsi indicated during that visit that Claimant's "episodes of joint swelling and pain are not as severe or as long lasting," and "found marked improvement in her condition." Tr. 16; 135. While Dr. Corsi recommended an evaluation, there is nothing in the record indicating the Claimant ever sought such an evaluation.

   The ALJ also considered the rest of Dr. Corsi's medical records, ultimately finding that they did not support a finding of disability. The record indicates that Dr. Corsi has been Claimant's treating rheumatologist for a number of years. As the ALJ noted, Dr. Corsi began treating Claimant after she was diagnosed with rheumatoid arthritis in 1999, and "treated the condition with Prednisone and Methotrexate." Tr. 15. The ALJ observed that Claimant experienced periods of marked improvement and periods of regression over the next few years. Tr. 15. However, the records pertaining to that period are only marginally relevant, given the fact that Claimant does not allege that she became disabled until November 2002.

   Dr. Corsi saw Claimant again just days before the alleged onset date, and the ALJ discussed that office visit in his decision. Tr. 16. Claimant complained "of severe pain in the

FINDINGS AND RECOMMENDATIONS - PAGE 9

palm of her hand and ability to flex fingers and persistent numbness of her second and third digits." Tr. 142. Dr. Corsi prescribed a "burst-and-taper" of prednisone and sent to physical therapy. Tr. 142. As the ALJ noted, Claimant's physical therapist completed a report just three days before her alleged onset day, indicating that Claimant's condition had improved significantly and she was able to return to work. Tr. 16; 118.

Claimant next saw Dr. Corsi some three months after her alleged onset. As the ALJ observed, Dr. Corsi reported that "Claimant's rheumatoid arthritis had improved, and she decreased her Prednisone dosage." Tr. 16; 139. At a follow-up visit on June 17, 2003, Dr. Corsi indicated that Claimant's rheumatoid arthritis was "doing about the same." Tr. 138. The final record from Dr. Corsi is the February 9, 2004, note discussed above.

In sum, the record from Dr. Corsi indicates the Claimant suffers ongoing pain and stiffness from her condition, and has periodic flares of arthritis. However, the record also indicates that Claimant's condition improves significantly following each flare and is controlled with medication. The ALJ properly relied on these records in finding that Claimant was not disabled.

<u>Dr. Selbach:</u>

Claimant argues the Commissioner failed to give sufficient weight to a form Dr. Selbach filled out for Claimant's disability insurance carrier in January 2005, just days before the ALJ

issued his decision. Claimant submitted the form to the Appeals Council in support of her request for review. Tr. 10, 244-47. The Appeals Council considered it, but declined to review the ALJ's decision.

The Appeals Council will review an ALJ's decision if an appellant submits "new and material evidence" and the decision is contrary to the weight of evidence of record. 20 C.F.R. § 404.970(b). The evidence must also relate to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). "Evidence is new within the meaning of [404.970(b)] if it is not duplicative or cumulative." *Wilkins v. Sec'y. Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Evidence is material when it creates a reasonable possibility that the outcome of the case would be different. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

Dr. Selbach completed the application at issue here in January 2005, after having evaluated Claimant on what appears to be a very limited basis. Dr. Selbach wrote on the application that Claimant was "unable to work 2nd to pain/dyspnea/depression." Tr. 248. But Dr. Selbach's conclusions are not supported by underlying clinical findings, and the record in fact indicates that she only saw Claimant twice. The first of these visits was on November 4, 2004, during which Dr. Selbach addressed Claimant's complains of pain in her wrists and ankles.

FINDINGS AND RECOMMENDATIONS - PAGE 11

Tr. 223. Dr. Selbach saw Claimant one more time, on December 23, 2004, to evaluate a lump on her buttock. Tr. 221-22. Dr. Selbach's conclusory statements as to Claimant's ability to work are unsupported by her limited treatment notes. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (recognizing that the Appeals Council need not accept a medical opinion that is "brief and conclusionary."). Because there was no "reasonable probability" that this form would have changed the outcome of the administrative hearing, the Appeals Council did not err in refusing to review the ALJ's decision on that basis. *Mayes v. Masanari*, 262 F.3d 963, 970 (9th Cir. 2001).

**B. Selective Reading of the Record**

Claimant also argues very generally that, while the ALJ acknowledged the various medical conditions with which her treating physicians diagnosed her, he based his disability determination on a selective reading of the record. This Court disagrees.

As discussed above, the ALJ's decision includes a thorough recitation of the medical evidence of record.[1] Claimant fails

---

[1] Well, fairly thorough anyway. The one exception is found at page 18 of the record, third paragraph, commencing with "Based on the medical evidence,..." where the ALJ goes on to describe Claimants residual functional capacity. He does not recite in his opinion where in the record he found the information upon which his conclusion is based. However, the record does support his conclusion as it tracks the Physical Residual Functional Capacity Assessment which is Ex. 3F to the record.

FINDINGS AND RECOMMENDATIONS - PAGE 12

to point to anything in the record that would undermine the ALJ's decision, and the Court concludes that substantial evidence of record supports the ALJ's assessment that Claimant is not disabled.

### C.  Credibility

Claimant next argues that the ALJ failed to cite sufficiently clear and convincing reasons for finding her testimony as to the extent of her pain and limitations not entirely credible.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (referring to *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom.  *Smolen*, at 1281-82 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony of the
FINDINGS AND RECOMMENDATIONS - PAGE 13

severity of the symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Id*. at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."

In assessing credibility the ALJ must also consider the factors set forth in SSR 96-7p including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *See also* 20 C.F.R. § 404.1529( c).

Here, the ALJ found that Claimant suffered from several conditions, including rheumatoid arthritis with inflammatory arthritis flares of joint pain, swelling and tenderness involving two or more joints, degenerative disc disease, a herniated disc, osteoarthritis, and stenosis.  Tr. 15.  The ALJ also found Claimant has neck and arm pain resulting from a neck-related injury, and acknowledged a neurological evaluation confirmed left cervical radiculopathy. Tr. 16.  The medical records support the ALJ's assessment of Claimant's condition, and further indicate that the conditions with which she was afflicted could reasonably be expected to produce some degree of symptom.  Tr. 110-229.  It is thus apparent that Claimant has made a showing sufficient to meet both prongs of the *Cotton* test.

Because Claimant satisfied the Cotton test, the ALJ could reject her subjective testimony as to the severity of her symptoms only by citing specific, clear and convincing reasons for doing so.

The ALJ in this case summarized much of Claimant's testimony, including her testimony that she suffered periods of time during flares when she needed help to dress or stand.  As the ALJ noted, Claimant testified that, during her period of flares, which last 3-5 days, "her feet burn and swell from a size 8 to a size 10 ½ requiring her to elevate her legs," and she must spend "70-75 percent of her day reclining and she rarely leaves

the house." Tr. 17. The ALJ cited sufficient reasons for rejecting her testimony as to the extreme extent of her limitations.

For example, the ALJ found that "the Claimant's activities are not representative of a disabling condition." Tr. 17. Specifically, he noted that Claimant had lived on a ranch out of town for the past five years, and for the past eleven months had lived there by herself. Relying on Claimant's testimony, the ALJ found that during that time she was "capable of household chores such as cooking and laundry, and she manages her personal grooming and finances. [She] has been able to shop, care for four donkeys, raise a garden, drive a vehicle, watch television and read." Tr. 18. The ALJ properly relied on evidence of Claimant's daily activities to support his assessment of her credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ also found that the medical evidence simply did not indicate that she suffered from such extreme limitations. For example, the ALJ observed that, contrary to her complaints of disabling pain, Claimant reported to Dr. Corsi in March 2003 that her episodes of joint swelling and pain were not as severe or lasted as long and Dr. Corsi reported a "marked improvement" in her condition. Tr. 17. The ALJ properly relied on the fact that the medical records did not support her claims regarding the

severity of her symptoms to support his credibility determination.

The ALJ also noted that while Claimant reported she could only "sit for 20 to 30 minutes at a time" she "demonstrated the ability to sit through her hearing, getting up to move about only once in an approximate two-hour period of time." Tr. 18. The ALJ also observed that, "[a]lthough the claimant testified that she was unable to walk at the time of her alleged onset of disability, she walked into the hearing room without the assistance of a cane or other supportive device." Tr. 18.

Finally, the ALJ found it was "reasonable to conclude that the claimant's condition has been tolerable, since she has made no attempts whatsoever to become involved in a vocational rehabilitation program." Tr. 18. The ALJ also questioned "claimant's motivation to return to work," in light of the fact that she received "monthly payments from a private disability insurance policy from a former employer" and had "made no attempts at a job search." Tr. 18. The ALJ may indeed discredit a claimant's excess symptom testimony based in part on lack of apparent motivation. See *Osenbrock v. Apfel*, 240 F.3d 1157-1165-67 (9th Cir. 2001) (an ALJ may discredit a claimant's excess symptom testimony in part based on lack of motivation). Nevertheless, the fact that Claimant had not attempted to look for work does not mean she was unmotivated and is perfectly

consistent with her testimony.  Although the ALJ's conclusion that Claimant lacked motivation does not appear to be supported by the record, the Court concludes that the other reasons cited by the ALJ are sufficient to support his credibility assessment.

In sum, review of the ALJ's decision indicates that he properly considered all of the relevant evidence of record, including medical and non-medical evidence, and set forth clear and convincing reasons, supported by substantial evidence in the record, for finding Claimant not entirely credible.

**D.  Multiple Impairments**

Finally, Claimant argues the ALJ failed to consider the effect her combination of impairments had on her ability to work. Specifically, Claimant maintains that the ALJ failed to mention her "cervical radiculopathy with hand and finger pain and numbness," her "deformed feet or hands", depression, sleep disturbances, chest pains, muscle spasms, and carpal tunnel snydrome. Pl.'s Br. in Support, at 9.

Review of the ALJ's decision, however, indicates that he did indeed consider most of those impairments.  For example, the ALJ observed the Claimant "was experiencing some depression" in January 2001, "which was reportedly improved with the use of anti-depressants." Tr. 16.  The ALJ also recognized that Claimant had complained in November 2001 of "increased fatigue and sleep disturbance," "photosensitivity and an intermittent blistering

rash." Tr. 16. In addition, the ALJ wrote that "Dr. Corsi noted the possibility of overlap lupus," and wrote of Claimant's "severe pain in the palm of her hands and numbness and inability to flex her fingers," as well as the fact that Dr. Corsi "assessed the probability of carpal tunnel syndrome." Tr. 16.

Thus, contrary to Claimant's assertion, the ALJ did consider these various impairments and their combined effect. The ALJ clearly evaluated all of the medical evidence, and ultimately found that the above-listed impairments were not severe and did not significantly impact her ability to work. That assessment is supported by the medical evidence.

While the ALJ did not mention any chest pain, review of the record shows just one mention of chest pain and Claimant fails to allege or point to any resulting limitations. Tr. 223. In sum, Claimant points to nothing in the record to establish a correlation between the chest pains which are relieved by Tums and Percocet and the alleged disabling condition. There is nothing in the record indicating this problem impacts her ability to work in any way. The same can be said for the muscle spasm reported in October 2004 for which her doctor prescribed Hydrocodone. The ALJ's failure to mention a medical condition apparently unrelated to the disabling condition is harmless and cannot be construed in any way as disregarding the medical evidence presented. Claimant's argument that the ALJ did not

consider her multiple impairments is not supported by the record. Review of the ALJ's decision show that he indeed acknowledged and consider her various impairments.

## VI.  Conclusion

The Court concludes that the ALJ properly considered the opinions of her treating physicians, and sufficiently supported his determination that Claimant's testimony was not entirely credible.  Finally, the ALJ did consider Claimant's multiple impairments when determining she retained the ability to perform a limited range of light work.  Accordingly, the ALJ's determination that Claimant is not disabled is based on substantial evidence within the record and should be upheld.